**Statement of Facts**

*The Commonwealth's Version of Events*

The Complainant testified that on January 26, 2017, she went to Mr. Smith's home at about 3:00 p.m. Tr. 2-14. She went there with Mr. Smith and a man she knew only by the nickname "Wolf." Tr. 2-16/20.

According to the Complainant, Wolf subsequently left the apartment. Tr. 2-20/21. Mr. Smith then offered the Complainant crack cocaine. Tr. 2-21. (The Complainant would tell an investigating officer that, before the date in question, she had gone to Mr. Smith's apartment to get high and drink. Tr. 2-164).

The Complainant subsequently left the apartment and went to Walgreens pharmacy to check on whether her prescription medications were ready. Tr. 2-21/22. She then returned to Mr. Smith's apartment. Tr. 2-23.

According to the Complainant, following her return to Mr. Smith's apartment, she sat on a couch, played with her phone, and took her pants off – becoming naked from the waist down. Tr. 2-28/29, 2-115/16, 2-160.[3]

---

[3] During the initial interview, the Complainant did not tell the investigating officer about having taken her pants off and being naked from the waist down. Tr. 3-46.

According to the Complainant, Mr. Smith then took his clothes off and tried to get her to smoke crack cocaine, putting a crack pipe in front of her. Tr. 2-29/30.

According to the Complainant, she had smoked crack earlier that day but did not want to do so again. Tr. 2-30; 2-89. Consequently, when Mr. Smith put the crack pipe in front her, she took it and threw it, breaking it. Tr. 2-30/31.[4]

According to the Complainant, at that point Mr. Smith became upset and hit her with a closed fist until she blacked out. Tr. 2-31/32.

According to the Complainant, Mr. Smith then orally penetrated her, at which time she bit his penis. Tr. 2-33-34. Mr. Smith then resumed hitting the Complainant, threw her onto the couch and told her that she was not going to leave. Tr. 2-34/35.

According to the Complainant, she broke Mr. Smith's glasses and used part of those glasses to stab him in the eye (stabbing him twice). Tr. 2-35/36.

---

[4] During the initial interview, the Complainant did not tell the investigating officer anything about throwing a crack pipe. Tr. 3-45/46.

According to the Complainant, she also stabbed Mr. Smith with scissors. Tr. 2-37/38.

According to the Complainant, during the time Mr. Smith was punching her she was able to get dressed (to put on clothes including pants). Tr. 2-149-50.

According to the Complainant, Mr. Smith was then bleeding from his eye (blood was "everywhere") and had not been injured elsewhere.[5] Tr. 2-38. According to the Complainant, she then went to a bathroom purportedly to get towels to clean up Mr. Smith's blood.[6] Tr. 2-39.

The Complainant took Mr. Smith's phone to the bathroom and called 911. Tr. 2-39. When the Complainant contacted the police during the 911 call she told them that Mr. Smith had "tried to rape" her. Tr. 2-82. She then opened the window and threw out Mr. Smith's phone. Tr. 2-39.

---

[5] According to an investigating police officer, on the day of the events in question Mr. Smith was observed to have both "some redness to his nose and his eye area" and "superficial cuts on his head." Tr. 3-18.

[6] The police would find only Mr. Smith's blood in the apartment; they found no blood of the Complainant. Tr. 3-52. Such investigators would find a "significant" amount of Mr. Smith's blood in and around the apartment. Tr. 3-52.

According to the Complainant, while in the bathroom she heard Mr. Smith say that he was going to get a gun and kill her. Tr. 2-40. Consequently, she climbed out the window. Tr. 2-40.

According to the Complainant, she then tried to climb three stories to the ground by means of holding onto a rain duct. Tr. 2-41. She then slipped and fell, evidently fracturing a pelvic bone. Tr. 2-41, 2-44.

According to the Complainant, she then walked to a friend's house and called the police. Tr. 2-42.

*Mr. Smith's Version of Events.*

Mr. Smith would testify that, while in his apartment with the Complainant, he fell asleep on a couch while the Complainant was in the kitchen preparing crack cocaine for herself. Tr. 3-159. When he awoke, he felt something hitting him on the head. Tr. 3-158. He assumed he was being stabbed with a knife because he was bleeding. Tr. 3-159.

The Complainant was screaming and stabbing Mr. Smith in the head. Tr. 3-159/60. Mr. Smith concluded that she was doing so because of her intake of crack cocaine. Tr. 3-160.

To Mr. Smith's understanding, except for that intake, nothing else had happened from the time he fell asleep on the couch to the time he awoke to find the Complainant stabbing him in the head. Tr. 3-159-60.

There was so much blood coming from Mr. Smith's head that he thought it was sweat. Tr. 3-160, 3-169. When he realized he was being stabbed, Mr. Smith grabbed the Complainant's right hand - in which she was holding the weapon with which she had stabbed Mr. Smith - then hit her four times. Tr. 3-167, 3-181. In essence, Mr. Smith, while using one hand to restrain the hand in which the Complainant held the weapon, Mr. Smith struck her with his other hand. Tr. 3-167, 3-181.

After he hit her "a couple of times," the Complainant dropped the weapon with which she had been stabbing him (at the time, Mr. Smith did not then know what the Complainant had used to stab him). Tr. 3-168/169.

Mr. Smith then subdued the Complainant by holding her down. Tr. 3-179. Mr. Smith would testify that:

> I was holding her down after she just finished stabbing me numerous times in the head and she was still flailing around and I didn't want her to resume the attack.

Tr. 3-179/80.

On that point, the cross-examination of Mr. Smith would include the following:

> Q. (by the Commonwealth) You told us that at some point you were holding her down?
>
> A. (by Mr. Smith) Yes.
>
> Q. You were holding her down for your safety?
>
> A. Exactly, she had just stabbed me numerous times and she was acting crazy---

Tr. 3-179.

Still on cross-examination, Mr. Smith would testify that he restrained the Complainant because he was trying to make sure she did not injury him further:

> Q. (by the Commonwealth) You continued to hold her down in the apartment?
>
> A. (by Mr. Smith) Yes, she was still acting very, very aggressive.
>
> Q. But she was trying to get away from you?
>
> A. I was trying to make sure she didn't injure me any further.
>
> Q. She was trying to get out of your grasp?
>
> A. I was trying to make sure she didn't injure me further.
>
> Q. Was she trying to get away from you?
>
> A. She was flailing. While I had her on the couch she was flailing and I was concerned for my safety, so I continued to hold her down until she stopped.

Tr. 3-180.

6

Immediately after the Complainant was subdued – immediately after she calmed down, Mr. Smith tried to stop the bleeding from his head. Tr. 3-161. In that regard, he left the Complainant lying on the couch and went to his bedroom and looked in a mirror at his injuries. Tr. 3-161, 4-5, 4-10.

During the ten to fifteen minutes he was in the bedroom, he heard a door slam. Tr. 3-163, 4-5. Mr. Smith did not know what door had slammed; he assumed it had been the front door and the Complainant had slammed it as she was leaving (the couch on which she had been lying was next to the front door). Tr. 4-5, 4-9/11.

ARGUMENTS

Central to Smith's claims, in the case at bar, is his understanding that the fact that an instruction was given incorrectly under state law is not a basis for Habeas relief. See <u>Marshall v. Lonberger</u>, 459 U.S. 422, 103 S. Ct. 843 (1983). Therefore, the question for this court is whether the failure to give the instructions (self-defense), by itself, so infected the the entire trial that the resulting conviction violates Due Process. <u>Cupp v. Naughten</u>, 94 S. Ct. 396 (1973). The U.S. Supreme Court requires that self-defense instruction be given if there is evidence sufficient for a reasonable jury to find in a defendant's favor.

Additionally, federal habeas corpus relief can only be granted if (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of facts, pursuant to section 2254(d)(2).

Ground One:

A defendant is entitled to a self-defense instruction if any view of the evidence presented at trial supports a reasonable doubt as to whether the prerequisites of self-defense were present. <u>Commonwealth v. Leoner-Aguirre</u>, 94 Mass. App. Ct. 581, 586 (2018) ("' a defendant is entitled to a self-defense instruction if any view of the evidence would support a reasonable doubt as to whether the prerequisits of self-defense were present'") (quoting <u>Commonwealth v. Pike</u>, 428 Mass. 393, 395 (1998) ).

The law is clear and well established as to who is entitled to self-defense instruction and when self-defense instruction must be given. A defendant is entitled to an instruction on the use of non-deadly force in self-defense "if the evidence, viewed in the light most favorable to the defendant without regard to credibility, supports a reasonable doubt that (1) the defendant had a reasonable concern for his personal safety; (2) he used all reasonable means to avoid physical combat; and (3) 'the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for

8

assessing reasonableness.'" Commonwealth v. King, 460 Mass. 80, 83 (2011), quoting Commonwealth v. Franchino, 61 Mass. App. Ct. 367,369 (2004).

In the instant matter, prior to the commonwealth resting and Smith testifying, stand-by counsel submitted written request for proposed jury instructions. A request for self-defense instruction was one of the requested instructions. The trial judge, however, did not hear argument or rule on the request until after Smith (the petitioner) testified, at trial, in his own defense. After the defense rested the trial judge denied Smith's request for self-defense instruction stating:

> "I am not going to give the self-defense instruction.
> I think the jury will sort out who they believe. The question is who was defending themselves against whom, and I'm not going to instruct the jury on that."

Tr. 4-17. Exhibit "A".

The trial judge obviously and clearly understood that Smith was asserting self-defense as to the charge of kidnapping and ! Smith readily testified that "I was just holding her down after she just finished stabbing me numerous times in the head and she was still flailing around and I didn't want her to resume the attack." Tr. 3-179/80.

The above decision is contrary to applicable law governing when a defendant is entitled to self-defense instruction and unlawfully lowered the commonwealth's burden of proof, Commonwealth v. Abubardar, 452 Mass. 1008, 1009 (2019)("The failure to provide a non-deadly force instruction lowered the commonwealth's burden to prove the absence of proper self-defense. Where the defendant was aquitted of the most serious charges against him, and where the evidence on all the charges depended heavily on the credibility of the testimony of both the defendant and the complainant, we are satisfied that the absence of such an instruction created a substantial risk of a miscarriage of Justice").

As in Abubardar, here, Smith was acquitted of all other charges

against him and the case depended heavily on the credibility of the testimony of both the defendant and the complainant. The court's refusal to inform the jury of the commonwealth's obligation to disprove self-defense improperly relieved the commonwealth of part of its burden, cutting to the core of the defense.

Given that the petitioner (Smith) restrained the complainant to avoid being stabbed - again, Smith acted lawfully and consequently did not engage in conduct that would constitute kidnapping. See Commonwealth v. Oberle, 476 Mass. 539, 548 (2017)("to prove a person guilty of kidnapping, the commonwealth must establish beyond a reasonable doubt that the person "without lawful authority, forcibly or secretly confined or imprisoned another person within this commonwealth").

Since Smith had testified - openly and repeatedly - to the fact that he restrained the complainant (to avoid being stabbed again), the failure to provide self-defense instruction went to the heart of his defense, causing maximal prejudice. Franchino, 61 Mass. App. Ct. at 376 ("finally, and perhaps most important, however, is that a claim of self-defense was at the core of the defendant's theory of the case on all charges: by misstating the law, the trial judge deprived the defendant of his main defense"). See also Jackson v. Edwards, 404 F.3d 612, 628 (2d Cir. 2005)(holding that a trial court applied the law unreasonably by not instructing the jury about justification defense).

Ground Two:

After conviction and sentence Smith filed a pro-se Motion For A New Trial alleging, amongst other claims, that the trial judge committed reversable error in refusing to give the requested self-defense instruction, at trial. While the entire motion was denied - as to the issue of refusing to provide the jury with self-defense instruction, the trial judge states:

> "Smith was not charged with assault and battery, where
> such an instruction might have been appropriate on the facts

of this case. Instead, the jury was considering charges of
kidnapping and rape, neither of which give rise to a self-
defense instruction. Commonwealth v. Clark, 20 Mass. App.
Ct. 392, 397 (1985)(no issue of self-defense relating to the
charge of rape or kidnapping)."

See Memorandum of Decision and Order on Defendant's Motion for a New Trial, pg. 6. Exhibit "B".

The decision to deny Smith's Motion for a New Trial is a clear and blatant abuse of discretion. <u>As a preliminary matter Smith catagorically states that there is absolutely no law in the entire country that prohibits a defendant from raising self-defense as a defense to a kidnapping charge</u>. This uncontroverted fact is most significant in this case in that Smith's sole defense to the charge of kidnapping was that he "restrained" the complainant to prevent her from continuing to stab him.

Smith further reminds this court that kidnapping is defined as the <u>UNLAWFUL</u> restraint of a person against their will. If the jury would have found that Smith's restraint of his attacker was done in self-defense - it is axiomatic that the commonwealth could not prove the elements of "kidnapping".

That no law exist, in the entire country, that prohibits the use of self-defense as a defense to kidnapping was confirmed by Justice Meade of the Massachusetts Appeals Court, during oral argument in this case. Justice Meade states:

"I'm stuck with the idea that one could kidnap someone in
self-defense. And I found no case here other than <u>Clark</u> any-
where in the country. And, you know what? My clerk looked too
and she's better at this than me."

See enclosed transcripts of the February 4, 2020 oral argument, pg. 7.

The trial judge's decision that Smith's charge of kidnapping did not give rise to a self-defense instruction is, if nothing, arbitrary,

unreasonable, erroneous and violative of Smith's Due Process Rights.

Ground Three:

After the pro-se petitioner was convicted and sentenced and filed his Motion for a New Trial - also denied, Smith had appellate counsel appointed to represent him for the consolidated appeals of his conviction and the denial of his new trial motion. The only issue pressed on appeal was the refusal of the trial judge to provide the jury with Smith's requested self-defense instruction and the reasons (basis) given for the above two decisions.

To that end - if the evidence produced at trial by either the commonwealth or the defendant is sufficient to raise the issue as to one or more of the charges, then the defendant is entitled to have the jury properly instructed on self-defense as it relates to the particular offense. Commonwealth v. Harrington, 379 Mass. 446, 450 (1980). "In determining whether the defendant met his burden, we review the evidence in the in the light most favorable to him, ... and treat his testimony, no matter how incredible ..., as true, and resolve all reasonable inferences in his favor." Commonwealth v. Lockwood, 95 Mass. App. Ct. 189, 197-98 (2019).

There is no ambiguity in the standards set out above. Smith now refers this court to the following echanges between the commonwealth (Mr. armstrong) and the Appeals court Justices:

> Justice Milkey: If there had been no evidence that he had grabbed her around the waist or otherwise refused to let her leave, could the -- or if the jury heard that evidence and didn't believe it|' could the jury have convicted him of kidnapping based on his lying on her on the couch and holding her wrists to prevent her from stabbing him further?

> Mr. Armstrong:(Commonwealth's Attorney) So in believing the defendant's version of events --

12

> Justice Milkey: And not crediting the grabbing around the waist or otherwise refusing her to leave, so the key evidence that the jury credits is that he restrained her on the couch by lying on top of her and holding her wrists, could that support a kidnapping conviction?
>
> Mr Armstrong: Certainly, because any restraint on a person's liberty is sufficient to support a conviction of kidnapping. But again --
>
> Justice Milkey: How do we know that the jury didn't go there? I was just looking at the closing and the Commonwealth didn't say "Okay. We're not basing kidnapping on this restraint, he didn't let her leave the apartment."

See attached Oral Arguments, pg. 14-15. Exhibit "C"

As will be relevant later the following statement by the commonwealth's attorney will contradict a significant factual assertion by the Appeals Court, in their decision.

> Mr Armstrong: Well, I think, importantly, in the Commonwealth's closing they argued that it was the entire confinement within the defendant's apartment. So the Commonwealth didn't isolate one incidence for -- in your hypothetical, the restraining her on the sofa, it was the entirety of the grabbing her, throwing her to the sofa, telling her in colorful terms that she was not going to leave and call the police.

See attached Oral Arguments, pg. 15. Exhibit "C".

> Justice Meade: If he had restrained her for the police, say, he overpowers his [inaudible] and he holds her until the police arrive --

Mr. Armstrong: Sure.

Justice Desmond: -- would he get a self defense instruction?

Mr. Armstrong: So that's interesting hypothetical because I think in that situation, he would not be charged with anything if the victim -- if the person attacked him first.

Justice Desmond: Well, that's what he's saying.

See attached Oral Arguments, pg. 16-17. Exhibit "C".

Totally ignoring the arbitrary, unreasonable and erroneous decisions made by the trial judge as well as the unequivacle admissions made by the commonwealth (above) the Appeals Court DENIED Smith's appeal, stating:

> In fact, the kidnapping charge did not stem from his momentary restraint of the victim on his sofa, but instead was the reult of the defendant grabbing the victim's waist when she tried to run out of his apartment, telling her "bitch you're not leaving here," and forcing the victim to escape out of his third floor bathroom window. In other words, even in the light most favorable to the defendant, his claim of self-defense was untethered to the conduct that constituted the kidnapping .... That is, the evidence did not raise a reasonable doubt as to whether the defendant had a reasonable concern for his personal safety (aside from the momentary fight on the couch) which bore any relation to the acts that amounted to the kidnapping. Accordingly, no view of the evidence would have entitled the defendant to a self-defense instruction in relation to the kidnapping charge.

Appeals court Decision, pg. 3-4. Exhibit "D".

For purposes of this habeas review Smith asserts that the Appeals Court Decision is legally and factually wrong.

The Appeals Court correctly acknowledges that a defendant is entitled to self-defense instruction "if the evidence, viewed in the light most favorable to the defendant ...." King, Franchino and Harrington, supra. The court then goes on to ignore the standards and criteria articulated in those cases. As stated above, Smith's sole defense and testimony related to the kidnapping charge was that he restrained the complainant only to prevent her from continuing to stab him. In that regard, Smith restrained the complainant on his couch and released her as soon as he determined that she no longer was a threat. Additionally, the commonwealth admitted, a number of times, during oral arguments that Smith's conviction could be based on his restraint of the complainant on his couch. That view alone entitled Smith to self-defense instructions. For, "viewed in the light most favorable to the defendant" is just that.

Further, for puposes of this analysis, Smith's Testimony must be accepted as true. Commonwealth v. Abubardar, 482 Mass. 1008, 1009 (2019)("drawing reasonable inferences in the defendant's favor, ... and taking the defendant's testimony as true, the evidence supported a finding that the defendant's actions against the complainant consisted solely of nondeadly force").

-In circumstances, as here, in which the commonwealth presented a case that may not be consistant with self-defense instruction and the defense presents a case that is consistent with self-defense instruction, the instruction must be given. Commonwealth v. Iaconiello, 90 Mass. App. Ct. 231, 237-38 (2016)("courts do not balance the testimony of the witnesses for each side, nor do we consider the credibility of the evidence.' ..." The evidence bearing upon self-defense may be contained in the commonwealth's case, the defendant's case, or the two in combination.").

As outlined above and significantly outlined in Smith's trial testimony, Motion for a New Trial, all state court briefs as well as

admissions made during oral arguments - Smith clearly exceeded the criteria entitling him to receive self-defense instructions as to the charge of kidnapping. The absence of such instruction was gravely prejudicial as it undercut Smith's only defense to the kidnapping charge, thereby constituting reversible error. See generally, <u>Franchino</u>.

With respect to the Appeals Court's unreasonable determination of facts. The Appeals Court base its decision on the unreasonable and unsupported conclusion that the kidnapping conviction was based on Smith"grabbing the complainant by the waist when she tried to run out of his apartment, telling her, Bitch, you're not leaving here,..." The record of this case should speak for itself - and speak loudly. At no point in the trial court proceedings had the commonwealth made the assertion that this specific conduct is what they theorize, argued or proved is the conduct that constituted the kidnapping. To the contrary, the Appeals Court claim takes the trial testimony out of context; the commonwealth never argued this claim at trial and during the oral arguments the commonwealth flat out refuted the assertion that that one act constituted their theory of the kidnapping. To be clear - Smith's testimony was that after being repeatedly stabbed in the head, by the complainant, he (Smith) grabbed her, disarmed her and threw her on the couch, briefly restraining her until he thought he was safe.

## Conclusion

Smith asserts that the above demonstrates that his due process rights were violated when the trial judge refused to instruct the jury on his requested self-defense instruction. The trial judge's refusal to give the self-defense instruction was "unreasonable" in light of her acknowledging that " The question is who was defending themselves against whom, and I'm not going to instruct the jury on that." Tr. 4-17.

The trial (due process) violation was compounded when the trial judge abused her discretion when she "unreasonably" denied Smith's Motion for a New Trial. As to the issue of denial of self-defense instruction the trial judge erroneously, unreasonably and arbitrarily

decided that Smith was not entitled to self-defense instructions as a matter of law - stating "the jury was considering charges of kidnapping and rape, neither of which give rise to self-defense instruction." Given the seriousness of this decision and its consequences, surely this Superior Court Judge knew or should have known that <u>there is no law in the entire country that prohibits the defense of self-defense to the charge of kidnapping</u>.

Based on the above two decisions and the reasons given for each, Smith, who until now was acting pro-se, was appointed Appellate Counsel. Through Appellate Counsel a consolidated appeal was filed in which the only question presented whether the evidence presented at trial, that Smith restrained the complainant to stop her from stabbing his, entitled him to self-defense instructions?

It is here, at this juncture in the proceedings, that the commonwealth, for the first time, makes the claim that "there was no rational connection between the defendant's self-defense claim and the evidence that established the forcible confinement of the victim against her will." It is important to note that this claim was never made at trial, never made during closing arguments, never made during Smith's filings or hearing on his motion for a new trial. In short - this new theory had absolutely no bearings on any of the decisions that are the basis for Smith's appeal. Additionally, there is not one scintilla of evidence that they jury credited any of the commonwealth's evidence, let alone based their decision on this <u>unargued</u> theory.

The law is consistant, clear and well established in that when considering whether the jury is to be provided with self-defense instruction "The evidence is to be viewed in the light most favorable to the defendant without regard to credibility." <u>Commonwealth v. King</u>, 460 Mass. 80, 87 (2011).

The Appeals Court, in their decision, blatantly ignored this well established dictum. Smith openly testified that he restrained the complainant, on his couch, to prevent her from causing additional harm to him. The complainant had just repeatedly stabbed Smith in the head, while he was sleeping. The commonwealth has agreed, repeatedly, during

oral arguments befor the Appeals court, that Smith could have been convicted based on nothing more than his testimony - that he restrained the complainant on his couch to prevent her from stabbing him. "If any view of the evidence supports self-defense then the instruction must be given."

However the Appeals Court "unreasonably" misapplied the law and decided to view the evidence in the light most favorable to the commonwealth - which is contrary to all applicable laws. The Appeals Court further "unreasonably" adopted facts that are not reflected in any of the testimony and evidence presented to the jury. In fact, the commonwealth specifically refuted (during hearing on motion for a new trial and again during oral arguments at the Appeals Court) that they were basing the kidnapping on the claim that Smith held the complainant by the waist, preventing her from leaving his apartment. Yet, in their decision the Appeals Court based their decision on their "unreasonable" determination that the claim that Smith grabbed the complainant by the waist - constitued the kidnapping.

For the reasons stated above Smith says that his conviction should be reversed and he should be granted a new trial. Smith welcomes any additional relief this court may deem appropriate.

Submitted

Dated: 10/20/20

Timothy Smith W111165
MCI Concord
P.O. Box 9106
Concord, Ma. 01742