1    certainly from Mr. Smith's perspective.

2              You know, he was being assaulted without

3    provocation by Ms. Johnson and responded to her

4    with force sufficient to essentially he escalates

5    the violence no more, no less.  I think that the

6    evidence, certainly the medical evidence that was

7    provided in terms of the makeup of her injuries,

8    the photographic injuries suggest that Mr. Smith

9    punched her no more than approximately four times.

10   The injuries that are depicted in the photographs

11   represents somebody who has been punched

12   approximately four times.  It is inconsistent with

13   the description provided by Ms. Johnson.  But the

14   only reason - and Mr. Smith isn't charged with

15   assault and battery and normally I would request a

16   self-defense instruction.  But where he's charged

17   with essentially committing an act of violence I

18   think a self-defense instruction is necessary so

19   the jury can understand exactly why he had

20   physical contact.

21              THE COURT: Alright.

22              Ms. Belland.

23              MS. BELLAND: Thank you, Your Honor.  The

24   Commonwealth is objecting to the instruction of

25   self-defense.  As Ms. Jeruchim noted he was not

1    charged with assault and battery, the

2    strangulation charge is no longer before the jury

3    for consideration.

4              THE COURT: I am not going to give a

5    self-defense instruction.  I think the jury will

6    sort out who they believe.  The question is who

7    was defending themselves against whom, and I am

8    not going to instruct the jury on that.

9              I note your objection for the record.

10             I will give an instruction - hold on one

11   second.

12             I will give an instruction on the

13   credibility of witnesses.  And I'll hear you on

14   the Bowden request.

15             MS. JERUCHIM: Your Honor, if I can just

16   pull up my requests for jury instruction.  Your

17   Honor, under those circumstances there was

18   evidence at the time - the issue, the live issue

19   is why Mr. Smith allegedly did what he did.  And

20   according to the Commonwealth's evidence I believe

21   at the time that the detectives interviewed Ms.

22   Johnson at the outset there was evidence, or she

23   told the officers, detectives, that both she and

24   Mr. Smith had been consuming crack with a crack

25   pipe.  There was only one crack pipe found in the



# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
CRIMINAL INDICTMENT
NO. 2017-199

2019 FEB 26  PM 2: 28

## COMMONWEALTH OF MASSACHUSETTS

vs.

### TIMOTHY SMITH

### MEMORANDUM OF DECISION AND ORDER
### ON DEFENDANT'S MOTION FOR A NEW TRIAL

Before the court is defendant Timothy Smith's ("Smith") Motion for New Trial arising from his April 13, 2018, conviction for kidnaping.  Smith, proceeding *pro se*, seeks a new trial on three grounds, that: he was denied effective representation at trial; the court erred in refusing to instruct the jury on self-defense; and the court considered inaccurate and improper information in imposing sentence.  After a hearing and careful consideration of the parties' written submissions, Smith's motion is **DENIED** for the reasons that follow.[1]

## *Procedural Background*

Smith was indicted on March 22, 2017, by a Suffolk County Grand Jury, which charged him with (1) rape in violation of G.L. c. 265 § 22(b), and as a habitual offender in violation of G.L. c. 279 § 25; (2) kidnaping, in violation of G.L. c. 265 § 26; and (3) strangulation or suffocation in violation of G.L. c. 256 §15D.

---

[1] Smith filed the instant motion for new trial, *pro se*, and failed to submit transcripts of his trial to the court. Counsel for the Commonwealth was trial counsel and this court presided over the trial. After careful review of the Commonwealth's Memorandum, the court adopts its facts insofar they are consistent with the court's memory of particular facts not contained in the court file.



On April 19, 2017, the court appointed Michael L. Tumposky, Esq. to represent Smith; he withdrew on May 9, 2015, on which date Stanley D. Helinski, Esq. was appointed to represent Smith. Helinski represented him until August 3, 2017, whereupon he withdrew and Vivianne Jeruchim, Esq. was appointed. Smith was represented also during the pre-trial proceedings for bail purposes by Derege Demissie, Esq. (appointed September 27, 2017) and Jeanne Carol, Esq. (appointed October 2, 2017). At a pre-trial hearing before this court (Miller, J.) on November 13, 2017, Smith waived his right to counsel. In recognition of the seriousness of the charges against Smith, and the perils of proceeding *pro se*, Judge Miller appointed Vivianne Jeruchim, Esq., as stand-by counsel. Along with Ms. Jeruchim, Smith represented himself at all pre-trial proceedings – both in court and in (voluminous) written submissions.

### *The Trial*

On April 10, 2018, Smith's jury trial commenced before this court (Brieger, J.). Smith again insisted on proceeding *pro se*, despite a lengthy colloquy during which the court advised Smith that such a decision might not be in his best interest in light of the nature of the charges and the seriousness of the potential penalties. Smith was adamant that he wanted to represent himself. This court appointed Ms. Jeruchim to serve as stand-by counsel, and requested that she confer with Smith at the conclusion of each witness's testimony to review Smith's tactical decisions and suggest any additional questions he may wish to pose. In fact, Jeruchim and Smith conferred repeatedly throughout the trial. Smith conducted each witness examination until mid-way through his cross-examination of his alleged victim, "LJ," whereupon he agreed to permit Jeruchim to complete the questioning. Ms. Jeruchim conducted the remainder of the witness examinations.

The victim in this matter, LJ, testified that she went to Smith's apartment at 112 Amory Street in Roxbury in the evening of January 26, 2017. Her testimony was clear, lucid and credible. During an argument over a broken crack pipe, LJ testified that Smith punched her repeatedly. At some point during the beating, LJ testified that she lost consciousness. When she regained consciousness, LJ's testimony was that she saw Smith standing over her, naked, with a condom on his penis. Smith then pulled LJ's head toward his groin, forcing his penis into her mouth. LJ fought off Smith by stabbing him with his glasses and with a small pair of grooming scissors. When LJ attempted to escape from the apartment, Smith held her back from the door with both hands around her waist, telling her that she was not leaving, since she might call the police. Smith released his hold over her only after she convinced him to allow her to use the bathroom. Once inside the bathroom, LJ testified that she was afraid to go back into the apartment, so she opened the window and jumped out to escape. Having fallen three floors, and despite having sustained a fractured pelvis, LJ walked to a neighboring building to call the police.

During the trial, the jury viewed a video admitted into evidence from a private surveillance camera of a nearby building that partially captured LJ's fall during her escape from Smith's apartment. The jury heard LJ's recorded call to 911 seeking assistance because she had to jump from a window because "a man tried to rape me."

Nicole DeSouza lived in a neighboring building, and testified that in the early morning hours of January 26, 2017, she heard a woman screaming for help and a man shouting, "Sit down and shut up!" Ms. DeSouza testified that she called 911 immediately. As she was on the phone with a 99 dispatcher, she looked out her window toward 112 Amory Street and saw a woman falling from the third story window to the ground. Ms. DeSouza's

3

recorded call to 911 was admitted and played for the jury.

Smith took the stand and admitted that he punched LJ at least four times, including on her head, face, and twice in the ribs because she stabbed him with a sharp object. Smith testified that he used a lot of force to hit LJ in the ribs. Smith also testified that he held LJ down on the couch to restrain her, releasing her only to clean up his blood, which he did in his bedroom. Smith testified that nothing prevented LJ from leaving through the front door of his apartment.

Detective Darlene Lagoa of the Boston Police Department testified that a search warrant was executed at Smith's apartment, pursuant to which Detectives seized a bloody condom from the top portion of the trash bag, broken glasses, and a pair of small grooming scissors. Detectives also found blood on a couch in the living room. Kathryne Hall and Rebecca Boissaye of the Boston Police Department Crime Lab testified about the forensic exam of the condom. Ms. Boissaye testified that LJ and Smith were both included as possible primary components to the mixture of two main DNA profiles detected on the condom. In the late afternoon of April 13, 2018, the jury convicted Smith of kidnaping and acquitted him of rape.[2]

The sentencing hearing was scheduled for April 17, 2018. Smith resumed *pro se* representation for the sentencing hearing, with Ms. Jeruchim in a stand-by capacity. The Commonwealth filed a sentencing memorandum with the court and served Smith and his stand-by counsel. Smith declined to file a sentencing memorandum, requesting instead the opportunity to argue at the hearing.

---

[2] The Commonwealth dismissed the strangulation charge because LJ's testimony at trial was that Smith held her down by the waist, not by placing his hands around her throat.

At the sentencing hearing, Smith recommended for himself a sentence of two years to two years and a day because he argued that his crime was committed in self-defense. Smith also argued that his acts did not produce LJ's injuries, and that her injuries were not significant. The Commonwealth recommended not less than eight years nor more than ten years, based on Smith's prior criminal record, the nature and circumstances of the crime, and the sentencing guidelines. This court imposed a sentence of eight to ten years on the charge of kidnaping, citing the nature and circumstances of the offense, Smith's criminal record, and the purposes of G.L. c. 279, section 25.

## DISCUSSION

Smith first claims that he is entitled to a new trial because he had ineffective assistance of counsel at his trial. Smith claims that, "[a]fter more than 10 months of fighting with 3 successive lawyers about their inaction with respect to investigating my case ... I became frustrated [and] I just wanted it over. ... All of the actions and/or inactions ... FORCED me to decide that further delays would be useless and I had to represent myself even thought I knew I was ill prepared."

A defendant has knowingly, intentionally and voluntarily waived his right to trial counsel where it was voluntary, and it was "an informed and intentional relinquishment of a known right. *Commonwealth v. Anderson*, 448 Mass. 548, 554 (2007)(in evaluating a waiver, court should consider the totality of the circumstances giving rise to the waiver). A court deciding where such a waiver was valid must consider the "totality of the circumstances under which it was made, indulging in every reasonable presumption against it." Id. Here, the pre-trial motion judge (Miller, J.) and the trial judge (Brieger, J.), conducted separate colloquies with Smith concerning his right to counsel and the potential

consequences of proceeding without counsel. Before his trial, Smith insisted repeatedly that he wanted to represent himself. During his trial, this court observed that Ms. Jeruchim scrupulously followed the court's admonition to confer with Smith during the course of the witness examinations to determine whether there were tactical decisions Smith could make, or questions he should pose.

In his memorandum in support of this motion, Smith simply suggests that he was "forced" to proceed *pro se* because his lawyers were not performing adequately on his behalf. No judge of this court made any such finding of ineffective assistance of counsel, nor is there any credible evidence in the record supporting Smith's late-in-the-day conclusion to that effect. It appears that Smith's claim of ineffective assistance now arises from "buyer's remorse" because the legal representation he insisted on (himself) was not as effective as he had hoped.

In consideration of all the circumstances here, including a review of the pleadings file, a review of the docket and having presided over Smith's trial, the court concludes that his waiver of his right to counsel was knowing, intentional and voluntary – and thus valid.

Smith's second claim is that this court erred by refusing to instruct the jury on self-defense. Smith claims that he struck the accuser "only after she stabbed me in the head numerous times." Def.'s Motion, p. 7. Smith was not charged with assault and battery, where such an instruction might have been appropriate on the facts of this case. Instead, the jury was considering charges of kidnaping and rape, neither of which give rise to a self-defense instruction. *Commonwealth v. Clark*, 20 Mass. App. Ct. 392, 397 (1985)(no issue of self-defense relating to the charge of rape or kidnaping).

Finally, Smith claims that the trial judge abused her discretion in imposing a sentence

based upon consideration of inappropriate factors, specifically, "erroneous, inaccurate, and misleading information as well as improperly considered uncharged and unindicted crimes." The sentence imposed in this case reflected the nature and seriousness of L.J.'s injuries sustained as she escaped from Smith, all of which were put before the jury, as well as Smith's criminal record, the guidelines, as well as all the evidence admitted during the trial. The sentence was a fair and reasonable exercise of discretion. No facts in Smith's Motion support his self-serving conclusion that he was unfairly sentenced.

For the foregoing reasons Defendant's Motion for a New Trial is **DENIED**.

**SO ORDERED**.

Heidi E. Brieger
Justice of the Superior Court

Dated at Lowell, Massachusetts, this 19th day of February, 2019.

1

```
                                        VOLUME:    I
                                        PAGES:     1 to 27
                                        EXHIBITS:  See Index


                COMMONWEALTH OF MASSACHUSETTS




SUFFOLK, ss.                       APPEALS COURT
                                   DOCKET NO. 2019-P-0792


_____

COMMONWEALTH OF MASSACHUSETTS

v.                                        ORAL ARGUMENT

TIMOTHY SMITH

_____


             BEFORE:    JUSTICE WILLIAM J. MEADE
                        JUSTICE JAMES R. MILKEY
                        JUSTICE DESMOND



APPEARANCES:

Counsel for the Commonwealth:
HOUSTON ARMSTRONG, ADA


Counsel for the Defendant:
JAMES P. McKENNA, ESQ.



                            04 February 2020
                            Boston, MA 02114


Transcript produced by Approved Court Transcriber Reporter
                    Jill Kourafas
                  REPORTERS, INC.
                  617-786-7783
                www.reportersinc.com
```

EXHIBIT "C"

1

2

3

4    **I N D E X**

5

6    <u>WITNESS:</u>              **DIRECT   CROSS   REDIRECT   RECROSS**

7    (No witnesses called.)

8

9

10   **E X H I B I T S**

11

12   <u>NOS.</u>            <u>DESCRIPTION</u>                    <u>IDEN.</u>   <u>EVID.</u>
     (No exhibits marked.)

13

14

15

16

17

18

19

20

21

22

23

24

25

# P R O C E E D I N G S

1

2

3     THE CLERK:  Hear ye, hear ye, hear ye.  All persons

4  having anything to do before the Honorable Justices of the

5  Appeals Court now sitting in Boston, in and for the

6  Commonwealth, draw near, give your attendance and you shall be

7  heard.  Now save the Commonwealth of Massachusetts.  Please be

8  seated.

9     JUSTICE MEADE:  Good morning.  Welcome to the Appeals

10  Court.  My name is Justice Meade.  To my right is -- is Milkey.

11  My notes say something else.  Justice Milkey.  To my left is

12  Justice Desmond.  He's more memorable than Milkey.

13     Most of you have been here before so you know what the

14  rules are.  Each side gets 15 minutes if you need to use all of

15  your time.  We do not entertain rebuttal.  We have read

16  everything.  So my advice is get right to the point.

17     And with that, our first case is 2019-P-792, Commonwealth

18  versus Smith.

19     Mr. McKenna.

20     MR. McKENNA:  Good morning.  May it please the Court.

21     It's difficult to imagine how self-defense could apply in

22  a case where a defendant grabs a child off the sidewalk.  It

23  really doesn't seem so it would have any application at all to

24  abduction and kidnapping, but that's not what we have here.

25  Here we have a restraint kidnapping.  Here we have a situation

1  where the defendant wakes up to being stabbed in the head.  And

2  that restrained reasonably the stabber.  And that then forms a

3  basis for the kidnapping charge, the conviction against him.

4      JUSTICE MEADE:  That's not what the Commonwealth says,

5  though.  I mean, they say the kidnapping restraint doesn't

6  occur until after that.

7      MR. McKENNA:  The Commonwealth relies upon a lot of

8  evidence that doesn't apply to the analysis before the Court.

9  They talk about how he, the defendant, my client, Mr. Smith,

10  told the victim that she could not leave.  They say that she

11  was -- that he forced her in the bathroom and kept her in there

12  until she climbed out the window.  None of that is before the

13  Court.

14      JUSTICE DESMOND:  Was there evidence that she attempted

15  to leave the apartment and he restrained her and grabbed her

16  from the waist and wouldn't let her out the door?

17      MR. McKENNA:  Yes, your Honor.

18      JUSTICE DESMOND:  So the Commonwealth says that's where

19  the kidnap took place.

20      MR. McKENNA:  And in the light most favorable to the

21  defense, if you look at where the -- if you look at all the

22  evidence under the standard, a very low burden as to whether

23  self-defense is to be considered is given to the jury.  The

24  account of my client, no matter how incredible it may seem to

25  be believed, says that didn't happen.

1   JUSTICE DESMOND:  Do you have any case where self-defense
2   had ever been applied to a kidnap case?
3   MR. McKENNA:  No, your Honor.  Except the Clark case and
4   that's tangential.  What it does -- we have cases and three of
5   them apply well to this point in our brief.  The -- we've got
6   the Ortega case, the Franchino and Iacoviello, all three
7   involved disputed sets of facts.
8   JUSTICE MEADE:  Did they all involve assaults that
9   self-defense was used?
10  MR. McKENNA:  Yes, your Honor.
11  JUSTICE MEADE:  I'd understand your argument if Mr. Smith
12  was charged with assaulting the victim on the couch, but he was
13  not.
14  MR. McKENNA:  He was not.  The same principles would
15  apply.  In each of those cases, there was a dispute as to the
16  facts, and -- a great dispute as to what happened.
17      The Commonwealth in its argument suggests that the most
18  inculpatory facts against my client, including, as your Honor
19  mentioned, the evidence that he restrained her at her waist and
20  wouldn't let her leave.  If you -- the Commonwealth says if you
21  viewed that evidence in the light most favorable to my client,
22  you shouldn't.  You should disregard that evidence.
23  JUSTICE MEADE:  I think Judge Desmond was getting to
24  this, too.  We do have to look at the evidence in the light
25  most favorable to the defendant and whether he's entitled to

1   the instruction.  But can the -- does that mean we have to --

2   the defendant can discount anything else that happened in the

3   case if they don't testify to it?

4        MR. McKENNA:  Yes, your Honor.

5        JUSTICE MEADE:  I want some authority for that.

6        MR. McKENNA:  That's the Franchino, the Iacoviello and

7   the Ortega cases where they have widely divergent of the facts.

8        JUSTICE MEADE:  Well, if they had -- if they had a

9   dispute as over what happened when he was asleep on the couch,

10  then I understand, but I don't think you get to the defendant

11  gets to say the operative conduct didn't occur because it's not

12  part of his testimony.  We have to credit his version of the

13  events, but can he just deny that the operative conduct

14  occurred?

15       MR. McKENNA:  Yes.  And he did.  You said he didn't grab

16  her by the waist, so that doesn't count.  His account then --

17  given the exceptional circumstances of the standard here, the

18  standards what wins it for Mr. Smith because it's a -- as the

19  Court has described, it's a very low burden, it's just as to

20  whether this instruction should be given.  And when you decide

21  that, you look at the evidence in light most favorable to him

22  and you discount what's not.

23       And the caselaw is wonderful from my client's

24  perspective.  It says that no matter how incredible a testimony

25  would be, his account should be accepted, and his account is he

1   doesn't even know she's in the bathroom.  He never threatens

2   her in there.  He's just stabbed in the head and goes to the

3   bedroom subsequently after holding her down.  That's the

4   account that would justify the self-defense instruction.  It's

5   not a sufficiency argument.

6        At one point the Commonwealth refers to the evidence as

7   being sufficient to justify the conviction.  That's not what

8   we're talking about here.  It's just whether there was enough

9   to get the instruction to the jury.  That's it.

10       JUSTICE MEADE:  I'm stuck with the idea that one could

11  kidnap someone in self-defense.  And I found no case here other

12  than Clark anywhere in the country.  And, you know what?  My

13  clerk looked too and she's better at this than me.

14       MR. McKENNA:  And, your Honor, both you and your clerk --

15       JUSTICE MEADE:  Because I think it's a legal non

16  sequitur.

17       MR. McKENNA:  And, your Honor, just respectfully that

18  both you and your clerk are far better at researching than I am

19  and I couldn't find anything either.  I don't think there is

20  anything on this --

21       JUSTICE MEADE:  Does that not indicate something?

22       MR. McKENNA:  It does.  Because kidnapping ordinarily is

23  something like abduction.  And you can't possibly have

24  kidnapping of -- self-defense applied to an abduction case.  A

25  child dropped off at the side of the road, there's no

1  self-defense element at all.

2  JUSTICE MEADE:  I could understand kidnapping under

3  duress even, but, I mean, could you sexually assault someone in

4  self-defense?

5  MR. McKENNA:  I can't imagine --

6  JUSTICE MEADE:  You want to put this in affirmative acts

7  of confinement which seems incompatible with the defendant has

8  to use all means reasonable to get away.  He could've just let

9  her leave.

10  MR. McKENNA:  She's stabbing him in the head.  And his

11  testimony is -- the version of events before the Court --

12  JUSTICE MEADE:  Well, let's assume that we do get to

13  consider the defendants' -- excuse me -- the Commonwealth's --

14  the victim's testimony that he held her by the waist and told

15  her she wasn't going anywhere in more colorful terms, why isn't

16  that -- which happened after the stabbing on the couch, how is

17  that self-defense?

18  MR. McKENNA:  It wouldn't be.  But that's not his version

19  of events.  His version of events is he leaves from the couch

20  and goes -- he's bleeding badly.  He goes to the bedroom and

21  tries to stop the blood.

22  JUSTICE MEADE:  I think if he testified about what

23  happened vis-a-vis restraining her that he says "I did not hold

24  her around the waist, I actually held the door open for her,"

25  now, then we have to credit his version of events.  But if he

1  has no memory or testimony on that subject, we have to ignore

2  the Commonwealth's evidence?

3       MR. McKENNA:  If it's different than his version, with

4  respect to --

5       JUSTICE MEADE:  But he has no version.

6       MR. McKENNA:  He says he was on the couch and he then he

7  goes to the bedroom.  This is like the Franchino case where

8  there was substantial evidence that in a domestic assault

9  matter, his version -- Mr. Franchino's version was not

10 necessarily true.  It doesn't matter.  In Franchino they said

11 the self-defense instruction should have been given despite the

12 fact that the Commonwealth had plenty of evidence saying that

13 it wasn't actually the case.  Here, the same thing would apply

14 to the extent that we don't get into credibility at all.

15 There's no balancing.  The caselaw talks about how there is no

16 balancing in this regard.

17      It's just is there enough to justify on any view of the

18 evidence, a very low -- as the Court has said, a very low

19 threshold, any view of the evidence to justify the self-defense

20 instruction?  And given his account where he says "I held her

21 down so she'd stop stabbing me."  That's enough.

22      -- The reliance upon the inculpatory evidence like saying

23 "I'm not going to let you leave the apartment" --

24      JUSTICE MEADE:  What if the -- what if, though, the

25 Commonwealth hasn't alleged that's the kidnapping?

1    MR. McKENNA:  Then that's all there is in terms of the

2  self-defense instruction, though.  It does -- it -- that

3  evidence would justify self-defense based on that the jury

4  could've found that was the kidnapping because his version --

5    JUSTICE MEADE:  It was never alleged to be the kidnapping

6  regardless of whose version it was.  The Commonwealth puts on a

7  case and they say "It's not letting her leave the apartment."

8  It's got nothing to do with the couch.

9    MR. McKENNA:  Then the self-defense instruction would

10  then apply.  Your Honor's point is very well taken because --

11  the legal non sequitur point is a great one because it doesn't

12  seem as though self-defense would apply to kidnapping at all.

13  But this is that unusual --

14    JUSTICE MEADE:  Not here or anywhere.

15    MR. McKENNA:  Because restraint kidnapping isn't the

16  ordinary form of kidnapping.  It's usually abduction or

17  concealment or something along those lines.  That's not here.

18  This is that --

19    JUSTICE MEADE:  Well, he conceals her in the apartment.

20    MR. McKENNA:  But he's restraining her.  That's the key.

21  Restraining her so he won't be stabbed.  And this comes across

22  at length.  There's a lot of testimony in that regard from

23  cross-examination in our brief about how he's trying not to be

24  stabbed again.

25    It brings up the question of what should someone do in

1   that circumstance.  Should -- what is -- what would the law

2   require him to do based upon his version of events which is the

3   only thing really before the Court in that regard.  What should

4   he have done?  He's being stabbed.  He's really restraining her

5   which would then be literally self-defense.  Apart from any

6   legal definition, that is the self-defense.  He's stopping

7   himself from being stabbed in the head by something he doesn't

8   know what he's being stabbed with at the time, doesn't know

9   it's scissors till later.

10      And I keep mentioning the three cases concerning the wide

11   divergence of the evidence because in each of those, the courts

12   found any version is sufficient to support self-defense.  It

13   doesn't have to be the one which would be supported by the

14   preponderance of the evidence or anything to that effect.  It's

15   just is there any version at all, even if there's not a

16   credible one that would support the instruction?  This is just

17   about the instruction.  It's not sufficiency of the evidence

18   for conviction.

19      So that's where we are.  It's just a question of if you

20   don't look at the most inculpatory evidence in the light most

21   favorable to the defendant, you look at the evidence in light

22   most -- in a way which -- is there any way to look at the

23   evidence that would support an instruction?  That's it.

24      JUSTICE MEADE:  What if it's not available as a matter of

25   law?

1    MR. McKENNA:  That goes back to the question of what

2 should he have done.  He's being stabbed in the head.  What

3 exactly --

4    JUSTICE MEADE:  I don't have -- I don't have an issue

5 with him trying to prevent the victim from stabbing him

6 further.  That's understandable.  But it -- but he's not

7 charged with assaulting her on the couch.

8    MR. McKENNA:  He's not, and if he were, we wouldn't be

9 here because the self-defense instruction would have been

10 given.

11    JUSTICE MEADE:  Right.

12    MR. McKENNA:  In terms of him stopping himself from being

13 stabbed, your Honor's point, what is he to do?  He's being

14 stabbed --

15    JUSTICE MEADE:  He can fend her off and then let her

16 leave, but instead, he held her by the waist and told her she

17 wasn't going anywhere.

18    MR. McKENNA:  According to the Commonwealth's evidence,

19 not according to his.  His evidence is he just holds her on the

20 couch and then goes to the bedroom.  And he doesn't know she

21 had gone to the bathroom at all.  He hears a door slam.  He

22 thinks she's left.  He's not keeping her from leaving based on

23 his version of the events.

24    Is it credible?  That's not before the Court because

25 it's -- as the Court has said, it's even incredible versions of

1 | events are sufficient to warrant the instruction.

2 |     JUSTICE MEADE: And what do you say about <u>Clark</u>?

3 |     MR. McKENNA: <u>Clark</u> involves a discussion of the

4 | particular facts in <u>Clark,</u> and they decide that they

5 | instruction wouldn't apply to kidnapping there. And from that

6 | perspective, the discussion of the facts would suggest that it

7 | would theoretically possibly apply if there were different

8 | facts. It's a different standard at that point, but it's --

9 | this case actually presents this Court with a chance to make

10 | new law in this regard as to restraint kidnapping, not

11 | abduction kidnapping. It's not a question of saying there's

12 | self-defense always applies to kidnapping. No. Can't it apply

13 | in the rare situation where there's a version of events

14 | indicating that the defendant to stop himself from being

15 | stabbed, restrains them?

16 |     Your Honor's point from a couple minutes back is well

17 | taken. He was entitled to do something to stop that. And he

18 | acted reasonably. He acted literally in self-defense at that

19 | point which is why there should have been an instruction.

20 |     Unless there's any further questions --

21 |     JUSTICE MEADE: Thank you.

22 |     MR. McKENNA: -- submit, thank you.

23 |     JUSTICE MEADE: Mr. Armstrong.

24 |     MR. ARMSTRONG: Good morning, your Honors. May it please

25 | the Court, Houston Armstrong on behalf of the Commonwealth.

1     This Court should affirm the defendant's -- the denial of

2 the defendant's motion for a new trial and his conviction of

3 kidnapping.

4     Specifically important to this is the defendant was

5 charged with rape, kidnapping and strangulation.  The

6 strangulation was directed out at the close of the

7 Commonwealth's case after the defendant's motion for a required

8 finding of not guilty because the victim testified that the

9 defendant grabbed her around the waist and not around the

10 throat.  So that crime was directed out after the close of the

11 Commonwealth's case.

12     As the case progressed, the defendant's testimony

13 differed greatly from the victim's testimony, and that the

14 defendant's testimony does not explain or warrant any

15 instruction in self-defense.

16     JUSTICE MILKEY:  If there had been no evidence that he

17 had grabbed her around the waist or otherwise refused to let

18 her leave, could the -- or if the jury heard that evidence and

19 didn't believe it, could the jury have convicted him of

20 kidnapping based on his lying on her on the couch and holding

21 her wrists to prevent her from stabbing him further?

22     MR. ARMSTRONG:  So in believing the defendant's version

23 of events --

24     JUSTICE MILKEY:  And not crediting the grabbing around

25 the waist or otherwise refusing her to leave, so the key

1    evidence that the jury credits is that he restrained her on the

2    couch by lying on top of her and holding her wrists, could that

3    support a kidnapping conviction?

4        MR. ARMSTRONG:  Certainly, because any restraint on a

5    person's liberty is sufficient to support a conviction of

6    kidnapping.  But, again --

7        JUSTICE MILKEY:  How do we know that the jury didn't go

8    there?  I was just looking at the closing and the Commonwealth

9    didn't say "Okay.  We're not basing kidnapping of this

10   restraint, he didn't let her leave the apartment."

11       MR. ARMSTRONG:  Well, I think, importantly, in the

12   Commonwealth's closing they argued that it was the entire

13   confinement within the defendant's apartment.  So the

14   Commonwealth didn't isolate one incidence for -- in your

15   hypothetical, the restraining her on the sofa, it was the

16   entirety of the grabbing her, throwing her to the sofa, telling

17   her in colorful terms that she was not going to leave and call

18   the police.

19       JUSTICE MILKEY:  But the jury didn't have to credit all

20   of their evidence you're saying in order to convict him of

21   kidnapping.

22       MR. ARMSTRONG:  Correct.  But just as they didn't have to

23   credit the defendant's versions of events to convict him of

24   kidnapping.

25       There was sufficient evidence based on the totality of

1  the evidence that was presented of the defendant's --

2      JUSTICE MILKEY:  But he's not arguing sufficiency.

3      MR. ARMSTRONG:  No, I understand that, but we're looking

4  at what the defendant's conduct was that rose to the charge of

5  kidnapping.

6      JUSTICE MILKEY:  And I think I just heard you say two

7  minutes ago that if the only evidence of kidnapping was his

8  restraining her on the couch that would support a kidnapping

9  conviction.

10     MR. ARMSTRONG:  It could, certainly.  But --

11     JUSTICE MILKEY:  So if that's true, why wouldn't he be

12 entitled to a self-defense instruction based on that?

13     MR. ARMSTRONG:  Because as Justice Meade pointed out, I

14 find it hard to create a scenario where you're kidnapping

15 someone in self-defense.

16     Just because the evidence is sufficient to show that he

17 kidnapped her doesn't mean he's entitled to a self-defense

18 instruction.

19     And I think, importantly, we're looking again at the

20 conduct -- the defendant's conduct in its entirety of confining

21 her within the apartment.  And the Commonwealth didn't isolate

22 one -- the one instance on a sofa where he restrained her

23 because that would eliminate the entire view of the evidence of

24 what the Commonwealth put on.

25     JUSTICE MEADE:  If he had restrained her for the police, --

1  say, he overpowers his [inaudible @ 13:27:49] and he holds her

2  until the police arrive --

3      MR. ARMSTRONG:  Sure.

4      JUSTICE DESMOND:  -- would he get a self-defense

5  instruction?

6      MR. ARMSTRONG:  So that's interesting hypothetical

7  because I think in that situation, he would not be charged with

8  anything if the victim -- if the person attacked him first.

9      JUSTICE DESMOND:  Well, that's what he's saying.

10      MR. ARMSTRONG:  Right.  But his version does not credit

11  or his version completely ignores the alleged kidnapping, the

12  conduct in which he was charged with kidnapping.  He's not

13  saying "I kidnapped her."  The defendant is saying "I was

14  protecting myself against an unprovoked attack."  That doesn't

15  -- that doesn't say that the kidnapping didn't happen, it says

16  none of these crimes that I was charged with happened, there's

17  a completely different version of events.

18      And we're looking at the defendant's conduct which gives

19  rise to the charges that he's on trial for, specifically, the

20  rape and the kidnapping.

21      JUSTICE MEADE:  Mr. McKenna tells us that we can't

22  consider anything that the defendant doesn't testify to as far

23  as the instruction being warranted, that the evidence in the

24  light most favorable to the defendant discounts things that he

25  doesn't even testify about.

1    MR. ARMSTRONG:  I don't believe the defendant is entitled

2  to define his conduct which results in the charges which was

3  kind of the back-and-forth that you and my brother had about

4  the defendant ignoring the facts that give rise to the charges.

5    So, he can't stand up and say, you know, Version B

6  happens, but the Commonwealth is charging him with Version A.

7    Again, this isn't -- this is his version of events in

8  which he committed no crimes, not the rape, not the kidnapping

9  and strangulation had been directed out.

10    But I think it's telling that there are no cases within

11  this Commonwealth or anywhere else that the Commonwealth was

12  able to find that support a self-defense instruction for

13  kidnapping.

14    And I think the Clark case is illustrated with that point

15  that you have two different version of events, one being the

16  Commonwealth's version, the victim's story that she was picked

17  up on a ride home, the defendant then drove her to an isolated

18  area and then raped her, tied her up and then was going to

19  potentially stab her and then she was able to escape.

20    And then you have the defendant's version that, "No, that

21  wasn't what happened.  It was a consensual encounter where the

22  victim was the aggressor.  That is very similar to here where

23  we have the victim -- the victim's version of events and the

24  defendant completely ignoring those events in his testimony.

25  Just as in Clark, the self-defense wasn't applicable to those

1   facts of kidnapping just as here self-defense is not available

2   to the facts of kidnapping in this case.

3         If the Court has no further questions...

4         JUSTICE MEADE:  Seeing none, thank you.  Thank you both.

5         MR. ARMSTRONE:  Thank you.

6   (End of digital recording.)



**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

## AUDIO ASSESSMENT FORM

> *For court transcribers:* Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.

**TODAY'S DATE:** 7/21/2020 **TRANSCRIBER NAME:** Jill Kourafas

**CASE NAME:** CW v Smith **DOCKET NUMBER:** 2019-P-0792

**RECORDING DATE:** 2/4/2020 **TRANSCRIPT VOLUME:**_____ OF_____

*(circle one)* **TYPE: D TAPE** **EMAIL** ✓ **QUALITY: EXCELLENT GOOD** ✓ **FAIR POOR**

*(circle all that apply)* **ISSUES** *(include time stamp):*

background noise                          time stamp:_____

low audio                                _____

low audio at sidebar                     _____

simultaneous speech                      _____

speaking away of microphone              _____

other:_____                     time stamp:_____

_____                          _____

_____                          _____

_____                          _____

**COMMENTS:**

_____

_____

1

2          C E R T I F I C A T E

3

4    I, Jill Kourafas, an Approved Court Transcriber, do hereby
     certify that the foregoing is a true and accurate transcript
5    from the audio recording provided to me by the Suffolk County
     Appeals Court in the above-entitled matter.

6

7    I, Jill Kourafas, further certify that the foregoing is in
     compliance with the Administrative Office of the Trial Court
     Directive on Transcript Format.

8

9    I, Jill Kourafas, further certify that I neither am counsel
     for, related to, nor employed by any of the parties to the
10   action in which this hearing was taken, and further that I am
     not financially nor otherwise interested in the outcome of
     the action.

11

12
                _Jill Kourafas_
13   Jill Kourafas
     Approved Court Transcriber

14

15

16
     Date:              7/12/2020
17

18   Business Address:  49 Bay Street, Quincy, MA 02171

19
     Business Telephone: 617-786-7783
20

21   Email Address:     mail@reportersinc.com

22

23

24

25

NOTICE:   Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.   Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.   A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n. 4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

19-P-792

COMMONWEALTH

<u>vs.</u>

TIMOTHY SMITH.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

After a jury trial, the defendant was convicted of kidnapping in violation of G. L. c. 265, § 26.[1]  On appeal, he claims the judge erred in refusing the defendant's request that the jury be instructed on self-defense, and that the judge abused her discretion by denying his motion for new trial which raised the same issue.[2]  We affirm.

A defendant is entitled to an instruction on the use of nondeadly force in self-defense "if the evidence, viewed in the light most favorable to the defendant without regard to credibility, supports a reasonable doubt that (1) the defendant

---

[1] The defendant's motion for a required finding of not guilty was allowed relative to an indictment which charged him with strangulation, and the defendant was acquitted on an indictment which charged him with rape.

[2] The defendant's motion for new trial also raised other issues, but they have not been pressed on appeal.

EXHIBIT "D"

had reasonable concern for his personal safety; (2) he used all reasonable means to avoid physical combat; and (3) 'the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for assessing reasonableness.'" Commonwealth v. King, 460 Mass. 80, 83 (2011), quoting Commonwealth v. Franchino, 61 Mass. App. Ct. 367, 369 (2004). See Commonwealth v. Harrington, 379 Mass. 446, 450 (1980). If, however, the evidence was insufficient to allow a reasonable doubt to be raised, no self-defense instruction would be necessary. See Commonwealth v. Maguire, 375 Mass. 768, 772 (1978).

As a starting point, the defendant can cite no case, and we are aware of none (in or outside the Commonwealth), in which a court has held that a defendant could kidnap a victim in self-defense. In fact, in Commonwealth v. Clark, 20 Mass. App. Ct. 392, 397 (1985), we held that "[t]here could be no issue of self-defense relating to the charge of rape or kidnapping." Even if we assume this was not a blanket statement of law, the defendant's claim in that case is similar to the defendant's claim here. In Clark, the Commonwealth's evidence showed that the defendant offered the victim a ride home in his van. Id. at 393. Instead of taking her home, the defendant tied, beat, and raped the victim before she managed to escape. Id. at 393-394. According to the defendant, there was no sexual encounter, and

the incident ended when the victim threatened him with a knife and he fought off her attack before pushing her out of the van. Id. at 396.  In the end, we held that even under the defendant's version, his assault on the victim did not have "additional significance," because it did not raise an issue of self-defense to the charge of rape or kidnapping.  Id. at 397.

Here, the Commonwealth did not allege or argue that the kidnapping occurred on the couch, but more broadly that the defendant would not let the victim leave his apartment after the sexual assault.  The defendant's claim is that he should have received the self-defense instruction because his action of restraining the victim on the sofa was done to protect himself from the victim's unprovoked attacks and that he was only trying to hold her until she stopped stabbing him.  If the defendant had been charged with assault and battery stemming from the couch incident, he would have been entitled to a self-defense instruction.  See Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004) ("Self-defense is reasonably invoked at a criminal trial only if there was a threat of harm to the person protected").  But he was not so charged.

In fact, the kidnapping charge did not stem from his momentary restraint of the victim on his sofa, but instead, was the result of the defendant grabbing the victim's waist when she tried to run out of his apartment, telling her, "Bitch, you're

not leaving here," and forcing the victim to escape out of his
third-floor bathroom window. In other words, even in the light
most favorable to the defendant, his claim of self-defense was
untethered to the conduct that constituted the kidnapping.  As
in Clark, his assault on the victim did not have "additional
significance" on the kidnapping charge.  See Clark, 20 Mass.
App. Ct. at 397.  That is, the evidence did not raise a
reasonable doubt as to whether the defendant had a reasonable
concern for his personal safety (aside from the momentary fight
on the couch) which bore any relation to the acts that amounted
to the kidnapping.  Accordingly, no view of the evidence would
have entitled the defendant to a self-defense instruction in
relation to the kidnapping charge.  Id.  For the same reasons,
the judge did not abuse her discretion by denying the motion for
new trial.

Judgment affirmed.

Order denying motion for new
    trial affirmed.

By the Court (Meade, Milkey &
    Desmond, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  March 10, 2020.

_____

[3] The panelists are listed in order of seniority.

CHARGE Conference

4-14

1    able to prove kidnapping or rape.

2              THE COURT: I will renew my denial.  I

3    believe there is sufficient evidence to get to the

4    jury on this.

5              Alright, I think it would be wise to

6    have a brief charge conference and then go right

7    into closing arguments, alright?

8              MS. JERUCHIM: Are we going to bring the

9    jury back upstairs?

10             THE COURT: I am not going to have a

11   charge conference in front of the jury.

12             MS. JERUCHIM: Okay, I just wanted to

13   make sure.  Thank you.

14             **SIDEBAR CONFERENCE CONCLUDED**

15

16             THE COURT: Alright, ladies and

17   gentlemen, I need to have a brief what they call a

18   charge conference which is a brief review of the

19   jury charge, and I need to have that before

20   counsel can start their closing argument so that

21   they know exactly what my legal charge will be.  I

22   cannot have the charge in front of you so I am

23   going to ask you to be excused to the jury room

24   and we will reconvene in approximately 15 minutes.

25             COURT OFFICER: Jurors, leave your

EXHIBIT "A"

4-15

1    notepads and please follow me.

2                        (Jurors are taken from the

3                        courtroom at 9:25 a.m.)

4              THE COURT: I have jury instructions from

5    both the Commonwealth and the defendant.  Let me

6    turn first to the requests for jury instructions

7    from the defendant.

8              MS. JERUCHIM: Your Honor, I didn't

9    receive the Commonwealth's instructions last night

10   by email.

11             MS. BELLAND: I apologize, I forwarded

12   them this morning.  But I could just let Ms.

13   Johnson know what I am requesting.

14             THE COURT: Alright, when we get to that

15   we will, she'll tell us what she's requesting.

16             With respect to the defendant's

17   requests, rape and kidnapping I will give the

18   standard MCLE instructions on those two

19   substantive offenses.

20             I'll hear you on the request for a self-

21   defense instruction.

22             MS. JERUCHIM: Your Honor, normally I

23   wouldn't request a self-defense instruction under

24   the circumstances, but I think we've met the

25   threshold under the circumstances, at least